IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL ACTION NO. 2:19-00093

CHRISTOPHER SPAULDING

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion for compassionate release.  (ECF No. 42.)  Defendant requests compassionate release in light of the COVID-19 pandemic.  The government filed a response opposing defendant's motion.  (ECF No. 45.)  For the following reasons, the court **DENIES** defendant's motion for compassionate release.

I.   Background

Defendant is 48 years old.  He suffers from idiopathic thrombocytopenic purpura, (ECF No. 42), which is also known as immune thrombocytopenic purpura and as ITP.  ITP is a "blood disorder characterized by a decrease in the number of platelets in the blood." See *Idiopathic Thrombocytopenic Purpura*, Johns Hopkins Medicine: Health (accessed Aug. 12, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/idiopathic-thrombocytopenic-purpura.  Platelets are blood cells that help stop bleeding.  Id.  "A decrease in platelets can cause easy bruising, bleeding gums, and internal bleeding.  This disease is caused by an immune reaction against

one's own platelets." Id.  Johns Hopkins Medicine also notes that ITP is "a fairly common blood disorder."  Id.

On August 13, 2019, defendant pled guilty to two felony counts:  possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A).  (ECF No. 31.)  On December 19, 2019, this court sentenced defendant to 78 months of incarceration.  (ECF No. 37.)  As of August 2020, defendant has served under 25% of his 78-month sentence.

Defendant is currently incarcerated at FCI Elkton in Lisbon, Ohio.  FCI Elkton has been the scene of one of the largest COVID-19 outbreaks in federal prisons, as 981 inmates at FCI Elkton have tested positive for COVID-19 and 9 inmates have died from COVID-19.  See *COVID-19 Cases*, Federal Bureau of Prisons (updated August 11, 2020), https://www.bop.gov/coronavirus/.  The Bureau of Prisons ("BOP") website currently lists FCI Elkton as having ten current COVID-19 cases – eight cases among inmates and two among staff.  See id.

On April 7, April 12, and April 16, 2020, defendant petitioned the Warden at FCI Elkton for compassionate release due to COVID-19.  (ECF No. 42.)  The Warden denied defendant's request on April 30, 2020.  (See ECF No. 45.)  Given these

2

circumstances showing that 30 days have passed since defendant submitted his request to the Warden, the United States does not contend that the defendant is barred from petitioning the court for compassionate release. (See id.)

**II. Analysis**

The First Step Act empowers criminal defendants to request that courts grant them compassionate release pursuant to 18 U.S.C § 3582(c). However, Congress has restricted the power of courts to modify a term of imprisonment once it has been imposed except when "extraordinary and compelling reasons warrant such a reduction" and when "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, to warrant compassionate release, defendant must show that: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) he is not a danger to the safety of others or the community; and (3) the reduction satisfies the sentencing factors in 18 U.S.C. § 3553(a). See id.; see also USSG §§1B1.13(1)(A),(2). All three factors must be present.

**A. Extraordinary and Compelling Reasons**

Other district courts, in considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, have considered the age of the prisoner, the severity and documented history of the defendant's health

3

conditions, and the proliferation and status of infections in the prison facility. United States v. Brady, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citing and gathering cases). Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry. See United States v. Shakur, 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

Defendant is 35 years old, and thus his age does not place him at risk for serious complications from COVID-19. Defendant states, however, that he suffers from ITP. The CDC has enumerated specific medical conditions and comorbidities that make individuals more susceptible to severe effects from COVID-19. See *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, Ctrs. For Disease Control & Prevention (updated July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's condition at issue here - ITP - is not listed by the CDC as a condition that either poses an "increased risk of severe illness from COVID-19" or "might" pose an increased risk for severe illness from COVID-19. See id.

Further, the American Society of Hematology ("ASH") states that "[t]hus far, there does not appear to be an increased incidence of infection or severe COVID-19 disease in ITP patients." *COVID-19 and ITP: Frequently Asked Questions*, Am.

4

Soc. Hematology (updated July 23, 2020), https://www.hematology.org/covid-19/covid-19-and-itp. While the ASH notes that "[s]evere COVID-19 infection is accompanied by a risk of thrombosis," it adds that "at this time there is no evidence that this risk is increased by raising platelet counts to hemostatic levels or exacerbated by any specific form of ITP management, even those such as splenectomy and thrombopoietic (TPO) agents associated with some excess thrombosis in specific non-COVID settings." Id. Additionally, the Platelet Disorder Support Association ("PDSA"),[1] states that, "[a]ccording to several of PDSA's medical advisors and ITP experts, there is very little to no added risk for ITP patients being infected by COVID-19." *Coronavirus (COVID-19)*, Platelet Disorder Support Ass'n (accessed Aug. 12, 2020), https://www.pdsa.org/patients-caregivers/disease-information/covid-19.html.

ITP does not create an increased risk of severe illness from COVID-19. Therefore, while FCI Elkton may be a place of (admittedly now diminished) COVID-19 outbreak, the court finds there are not individualized "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A) to support a reduced sentence or early release. See United States

---

[1] PDSA is a leading nonprofit that provides critical medical information and representation specifically to individuals with an ITP diagnosis.

v. Gandy, 2020 WL 4592904, at *4 (E.D. Mich. Aug. 11, 2020) ("[B]ecause Defendant has not alleged that he is at a higher risk of a dire outcome or death from COVID-19, extraordinary and compelling circumstances do not justify compassionate release"); United States v. Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) ("In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility.") (emphasis added).

**B. 18 U.S.C. § 3553(a) Sentencing Factors**

In any event, the sentencing factors under 18 U.S.C. § 3553(a) also do not weigh in favor of reducing defendant's sentence. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among

6

defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Defendant's crimes were indisputably serious: he trafficked methamphetamine and used a weapon in furtherance of his drug trafficking activity. (See ECF No. 37.) And defendant has served less than 25% of his sentence. See, e.g., United States v. Colonna, 2020 WL 2839172, at *4 (S.D. Fla. June 1, 2020) (holding that a modification of defendant's sentence is unwarranted in part because defendant had served less than 25% of the sentence); United States v. Linder, 2020 WL 2793089, at *4 (W.D. Pa. May 29, 2020) (same); United States v. Singui, 2020 WL 2523114, at *5 (C.D. Cal. May 18, 2020) (same). Therefore, granting defendant's motion for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a).

III. **Conclusion**

Given defendant's lack of a medical condition creating an increased risk of severe illness from COVID-19, the seriousness of defendant's offense, and the fact that he has served under 25% of his sentence, the court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Defendant's motion for compassionate release, (ECF No. 42), is **DENIED**.

The Clerk is directed to send a copy of this Order to counsel of record, any unrepresented parties, the Warden at FCI Elkton in Lisbon, Ohio, and the Probation Office of this court.

It is SO ORDERED this 12th day of August, 2020.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge